**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr. |

**DEFENDANT'S MOTION TO ADOPT ALL PRIOR MOTIONS AS IF FILED AFTER THE SPECIAL MASTER'S FINAL REPORT, AND TO HOLD THE SPECIAL MASTER'S SECOND SUPPLEMENT (DOC. 245) AND PROPOSED FINAL ORDER OF RESTITUTION (DOC. 245-1) IN ABEYANCE PENDING THE GOVERNMENT'S RESPONSE TO DEFENDANT'S PENDING MOTIONS**

Defendant Greg E. Lindberg respectfully moves the Court, pursuant to 18 U.S.C. § 3664(e) and (d)(6) and the Court's authority to manage its docket, to hold the Special Master's Second Supplement to the Report and Recommendations Regarding Restitution (Doc. 245) and the proposed Final Order of Restitution (Doc. 245-1) in abeyance until the Government has responded on the merits to the pending motions now before the Court, and the Court has ruled on them. In support, Mr. Lindberg states:

1. Eight of Mr. Lindberg's motions remain pending, and the Government has not responded on the merits to any of them: (a) the Emergency Motion to Stay All Further Asset Sales and to Stay Enforcement of the Preliminary Order of Restitution (Doc. 172, filed June 9, 2026); (b) the Emergency Motion to Stay All Asset Sales Pending Entry of a Final Restitution Order and a De Novo Article III Determination, with Consolidated Objections to the scope and validity of the Special Master reference (Doc. 190, filed June 11, 2026); (c) and (d) the Emergency Motions of June 15, 2026 to enforce the Plea Agreement and the Order Appointing the Special Master and

to preserve Mr. Lindberg's due-process rights (Docs. 201, 202); (e) the Motion for a Determination That No Restitution Is Owed, with the Consolidated Statement of Facts (Docs. 234, 235, filed July 14, 2026); and (f) the Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum to Michael Dinius, to the Special Master and NHC Holdings, LLC, to Paladin Management Group, to the NCICs, to the Bermuda insurance companies through their Joint Provisional Liquidators, and to counsel for the NCICs (Doc. 248, filed July 23, 2026) and the two motions to disqualify the special master and the this motion to refile to all motions as if filed after the final report and to keep the special masters report in abeyance until all motions that are pending are responded to by the government and adjudicated. Together these motions place in dispute every threshold question in this proceeding: whether any restitution is owed at all, the proximate-cause and foreseeability limits on the claimed loss, the mandatory offsets and credits, the exclusion of prejudgment interest, the scope and validity of the Special Master reference, and Mr. Lindberg's due-process rights. The specific issues each of these motions places before the Court are itemized in the schedule attached as Exhibit B.

2. Rather than respond, the Government has permitted the Special Master to file a Second Supplement (Doc. 245) and a proposed Final Order of Restitution (Doc. 245-1). A report and recommendation by a court-appointed master is not a response to Mr. Lindberg's motions, and it does not resolve the issues those motions raise—causation, foreseeability, proximate cause, the offense-of-conviction limit, and the mandatory credits and offsets. Those issues must be decided first; a recommended dollar figure cannot be adopted before the Court determines whether any restitution is due at all.

3. The Government's silence is a failure of proof under 18 U.S.C. § 3664(e). The statute provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved

by the court by the preponderance of the evidence," and that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). A defendant's burden arises only "once the Government has satisfied its burden to offer evidence supporting its restitution calculation." *United States v. Stone*, 866 F.3d 219, 227 (4th Cir. 2017). Where the Government does not carry that initial burden, "the burden of proof never shift[s]" to the defendant, and the resulting restitution order cannot stand. *United States v. Steele*, 897 F.3d 606, 614 (4th Cir. 2018) (vacating restitution order). The Government's non-response to six motions that contest loss, causation, and amount is not a neutral procedural gap; it is a failure to carry a burden the statute assigns to it, and every disputed item on which the Government offers no evidence must be resolved against the Government as the party bearing the burden.

4. The Special Master's report is not a substitute for the Government's proof. By its terms, § 3664(e) places the burden "on the attorney for the Government"—not on a court-appointed master. *Steele*, 897 F.3d at 613. A court-appointed master's recommendation cannot discharge a burden the statute assigns to the prosecutor, and the Special Master's charge under the appointing order (Doc. 56) and § 3664(d)(6) is to assist the Court, subject to the Court's de novo determination—not to prove the Government's case. If the Government were to contend that the Special Master's report is its response—that the report supplies the causation, foreseeability, and loss proof the Government has never offered—then the Government would have delegated its prosecutorial burden to a court-appointed master, and the Special Master would be converted into the prosecutor. Neither the MVRA nor the separation of the Court's adjudicative function from the Executive's charging-and-proof function permits that result. The report therefore cannot be accepted, adopted, or acted upon as though it were the Government's proof.

5. The report is also the work product of a fiduciary who has not met his obligations to the very assets at issue. Under the appointing order, the Special Master holds full authority over NHC Holdings, LLC as fiduciary, and NHC is a Primary Restitution Asset. Doc. 56. Yet in December 2025 the Beckett Collectibles business—valued at approximately $1 billion, and at an $800–900 million enterprise value in the Blackstone negotiations—was sold to Collectors for approximately $134 million, a loss of roughly $866 million in restitution value. The sale required the Special Master's consent and could not have occurred without it: any sale of Beckett assets is a "Fundamental BKX Matter" requiring Grantor approval under the Beckett Collectibles Trust (Amended and Restated Trust Agreement, Dec. 5, 2023), the Grantor is controlled by NHC, and the Special Master controls NHC's board. The Second Supplement itself acknowledges that the sale occurred with the consent of NHC Holdings, LLC. Doc. 245 at 31 & n.29. The Special Master nonetheless neither sought nor obtained the Court approval his own appointing order twice requires before any restitution asset is liquidated. Doc. 56, ¶ 6(e) (the Special Master "shall seek Court approval to liquidate … any available assets for the benefit of victims"); see Doc. 172; Doc. 190. No accounting of the approximately $134 million in proceeds has ever been provided. Doc. 245 at 31.

6. These pending motions are therefore central to a threshold question the Court must answer before it relies on the report for anything: whether a Final Report prepared by a fiduciary who disposed of a Primary Restitution Asset in violation of his own appointing order, forfeited roughly $866 million in restitution value, and has never accounted for the proceeds can be relied upon to adjudicate how the entire restitution proceeds. Docs. 172, 190, 201, 202, 234, 235, 248. That question cannot be answered while the report is being adopted; it must be answered first. To accept or act upon the report before the Government responds and the Court resolves these motions

would let the recommendation of a breaching fiduciary—unsupported by the Government's own proof—fix a criminal penalty exceeding $1.6 billion.

7. Any delay in fixing restitution is the Government's doing, not Mr. Lindberg's. The Government cannot have it both ways on timing: it presses the 90-day clock of 18 U.S.C. § 3664(d)(5) to justify finalizing the Report and fixing restitution now, yet its own authority dissolves the urgency — a court that does not meet that deadline "nonetheless retains the power to order restitution." Dolan v. United States, 560 U.S. 605, 608 (2010). No deadline requires the Report to be finalized, or restitution fixed, before the pending motions are answered. The Government's own conduct confirms the point. At sentencing, the Government asked the Court to make Mr. Lindberg's cooperation with the restitution process a condition of supervised release — "a special condition that, should the Special Master still be working when the defendant goes on supervised release, that a term of the supervised release is to continue cooperating with the Special Master." Sent. Tr. at 70:1–5. Supervised release does not begin until Mr. Lindberg's release from a twelve-year sentence — years from now — so the Government itself expected the restitution process to continue for years, and it cannot now invoke the 90-day clock to finalize restitution in a matter of weeks, before the pending motions are answered. The Government, having itself delayed its responses to the pending motions, cannot now seek compliance with the 90-day deadline of 18 U.S.C. § 3664(d)(5) — a deadline that was in any event mooted by the bifurcation process. Mr. Lindberg has done his part. He has no way to touch a computer or to use a spreadsheet, yet he is required to answer a restitution demand exceeding $1.6 billion that rests on the Special Master's own admitted "current guess" as to value. Doc. 245 at 36–37. From federal custody, and with only limited access to counsel, he prepared a detailed Response and Objection to the Special Master's Report and Recommendations Regarding Restitution—supported by verified statements

of fact and contemporaneous documents—which is attached as Exhibit A, and he has filed the six motions listed above. The Government has answered none of them. It has instead opposed even the Rule 17(c) subpoenas by which Mr. Lindberg seeks the records—held by the Special Master, the Rehabilitator (Michael Dinius), NHC Holdings, LLC, and Paladin Management—that he needs to carry the burden the statute places on him to prove the mandatory offsets and to establish causation. Doc. 248. A defendant who has litigated diligently from prison cannot be charged with delay that the Government alone has caused by refusing to respond; the § 3664(d)(6) determination should proceed once the Government does what the statute requires of it.

8. No evidence of any money missing has ever been produced by the government or the special master. The protected North Carolina policyholders—approximately 43,000—received their final distributions in December 2025. See Doc. 174 ¶ 120 (more than $157 million distributed to more than 43,000 policyholders). ULICO holds $352,906,240 in AAPC preferred equity credited dollar-for-dollar against its claim—collateral that 18 U.S.C. § 3664(j)(2) commands be credited. Doc. 132 at 18; Doc. 234 at 46. And the credits the Special Master's own Report itemizes for cash and near-cash recoveries—SNIC payments ($27,823,425); cash payments to the restitution parties the Report did not capture ($79,655,289); the CBL subordination fee ($3,000,000); the CWG income-tax escrow ($20,000,000); ULICO real-estate proceeds ($13,596,013); and Bermuda sale proceeds ($9,800,076)—themselves total more than $150 million. Doc. 245 at 5–6. Those cash credits alone exceed the residual restitution that could remain even if every disputed causation and valuation item were resolved against Mr. Lindberg, and, with the mandatory offsets and non-caused losses fully applied, net restitution is zero.

9. The merits confirm that Mr. Lindberg is the source of neither any loss nor any delay. He contributed approximately $1 billion of his own capital to the businesses as a net addition to

their surplus—a first-loss position that would be exhausted before any protected policyholder or creditor bore a dollar of loss—so that no loss to the protected parties was reasonably foreseeable at origination. When control passed in 2018, independent firms including Houlihan Lokey and KPMG valued the companies and found the affiliated loans well secured, with "full coverage," as the Response attached as Exhibit A documents. And the plea agreement waived no restitution amount: it fixes only the quantum—"full restitution, regardless of the resulting loss amount"—while confining restitution to persons "directly or indirectly harmed by [Mr. Lindberg's] criminal conduct," and it does not touch causation, which remains the Government's burden to prove. Doc. 40 ¶ 10(a); 18 U.S.C. § 3664(e). Mr. Lindberg therefore does not seek to delay; he asks only that the Government be required to carry, or to fail to carry, its § 3664(e) burden—at which point the Court must decide the consequence of the Government's failure.

10. The ordering is not a formality; it is dispositive, and it runs one way only. Four things must happen in sequence, and each is a precondition to the next. First, liability precedes amount: whether any loss was proximately caused by the offense of conviction, and proven, must be decided before any figure is fixed—adopting a recommended amount first decides the remedy before the Court has decided whether there is anything to remedy. Second, the Government's burden precedes Mr. Lindberg's: only "once the Government has satisfied its burden" does any burden shift to the defendant, *Stone*, 866 F.3d at 227, so acting on the report first inverts that order and forces Mr. Lindberg to disprove an amount the Government has never proved. Third, a neutral first-instance determination precedes any deference: a party "is entitled to a neutral and detached judge in the first instance," and a proceeding is not "constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication." *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972). The de novo determination under § 3664(d)(6) that the Government

will invoke therefore cannot cure a report produced by an officer who—as the pending motion contends (Doc. 190)—both holds and liquidates the estate and quantifies the loss, and is paid from that estate. Fourth, adjudication precedes enforcement: because § 3664(j)(2) supplies only an offset against future payments and no clawback from the payees, once assets are liquidated and the proceeds disbursed the harm cannot be undone—as the Beckett sale already shows. Taking these steps out of order does not merely risk error; it produces an irreversible result that no later review can repair. That is why the report must be held in abeyance until the Government responds and the Court decides the pending motions.

11. Holding the report in abeyance pending the Government's response is the orderly course. The pending motions raise dispositive and threshold questions that logically precede any adoption of a report recommending an amount. Adopting the report first would let a master's recommendation stand in for proof the Government has never submitted, and would force Mr. Lindberg to litigate an amount before the Court has decided whether any restitution is owed. Nor does the ninety-day timeline of 18 U.S.C. § 3664(d)(5) compel a different course: a sentencing court that misses that deadline "nonetheless retains the power to order restitution," *Dolan v. United States*, 560 U.S. 605, 608 (2010), so the Court retains full authority to require the Government's response, resolve the pending motions, and make the § 3664(d)(6) determination on a complete record. Abeyance preserves the status quo, prejudices no party, and ensures that the de novo determination § 3664(d)(6) requires is made after the Government responds.

12. Defendant readopts and re-files, by this motion, each of his pending motions as though filed after the Special Master's Final Report, with every reference to the preliminary report or the Preliminary Order of Restitution (Doc. 161) deemed, mutatis mutandis, a reference to the Final Report and to any final order of restitution entered upon it. The issues those motions raise

— whether any restitution is owed at all, causation, foreseeability, the offense-of-conviction limit, the mandatory offsets and credits, the scope and validity of the Special Master reference, and Mr. Lindberg's due-process and counsel-access rights — are not changed by the label "final," and Defendant presses each of them against the Final Report to the same effect as against the preliminary one.

13. Since the six motions listed above were filed, Defendant has also filed a Motion to Disqualify and Remove the Special Master (Doc. 269) and a Second Motion to Set Aside the Special Master's Report and the Restitution Orders. Together with the Motion for a Determination That No Restitution Is Owed (Doc. 234) — the motion to dismiss the restitution claim — these motions place the validity of the report and the existence of any loss squarely in issue. To the extent the Government contends that the Final Report moots any of these motions, it must say so as to each, and must state its position on every part of every motion now before the Court, including the Motion to Dismiss. A blanket invocation of the Final Report is not a response; the Government must join issue, part by part, or concede each point it declines to contest.

14. The Government has now responded to the Special Master's Report by adopting it: it "agrees with each of the Special Master's recommendations," Doc. 582 at 9 n.4, and has stated that it "does not oppose the positions articulated by the Special Master," Doc. 245 at 44. That adoption does not cure the issues these motions raise. In any event, the Government cannot discharge its burden by adopting the Special Master's position. The burden of proving the amount of loss, causation, and foreseeability is placed "on the attorney for the Government," 18 U.S.C. § 3664(e); under the MVRA the duty to prosecute the restitution claim — to come forward with proof and to join issue on the defense motions — lies with the Government, and not with a court-appointed master. Were the Government to stand on the Special Master's report in place of its own

proof, it would convert the Special Master into a second prosecutor — one paid from the very sale proceeds he generated and administers — a result neither the MVRA nor the separation of the Court's adjudicative function from the Executive's charging-and-proof function permits. Each pending motion must therefore be answered on the merits, all the more so given the pending Motion to Disqualify and the Second Motion to Set Aside, which place the neutrality and validity of the report itself in issue: the Government cannot rest on a report that is the subject of a pending disqualification-and-set-aside challenge. Any failure to respond is a failure to prosecute the restitution claim, and the Government's failure to answer will be read against it as such — every disputed item on which the Government offers no response and no evidence must be resolved against it as the party bearing the § 3664(e) burden, as set out above (¶ 3).

15. The Government's disclosure and production obligations reach further still. The claimed loss turns on intervening transactions the Government itself affected: the Ares transaction, for example, was stopped by the Government, as a note placed on the record and attached to Defendant's Motion to Dismiss the restitution claim reflects. Because the Government bears the burden under 18 U.S.C. § 3664(e) and must disclose evidence bearing on causation and loss, it must produce everything responsive that is held by any arm of the Government — including its investigative agencies, such as the Federal Bureau of Investigation, and every other department or agency — not merely the materials in the prosecutors' immediate possession. None of that can occur, and none of the disputed issues can be resolved, without the Government's response, on the merits, to each and every issue these motions raise.

WHEREFORE, Mr. Lindberg respectfully requests that the Court: (1) hold the Special Master's Second Supplement (Doc. 245) and proposed Final Order of Restitution (Doc. 245-1) in abeyance; (2) direct the Government to file a merits response to each of the pending motions —

including the Motion to Disqualify and Remove the Special Master (Doc. 269), the Second Motion to Set Aside the Special Master's Report and the Restitution Orders, and the Motion for a Determination That No Restitution Is Owed (Doc. 234) — within seven (7) days, stating its position on each part of each motion, and afford Mr. Lindberg an opportunity to reply; (3) treat any failure by the Government to respond to a motion, or to any part of a motion, as a failure to prosecute the restitution claim, and resolve each unanswered item against the Government as the party bearing the § 3664(e) burden; (4) rule on those motions — and resolve the Government's § 3664(e) burden on causation, foreseeability, and amount — before accepting, adopting, or acting upon the report; and (5) grant such other and further relief as is just.

Dated: August 6, 2026.

Respectfully submitted,

/s/ Kenneth N. Barnes

Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com
*Counsel for Greg E. Lindberg*[1]

[1] Pursuant to LCrR 44.1 and LCvR 83.1 (c)(4), attorney Vivek Ramachandran has not signed this document while his Motion for Pro Hac Vice remains pending.

**CONSULTATION STATEMENT**

Pursuant to the Local Rules, counsel states that the relief requested was raised with counsel for the United States and counsel for the Special Master, both of whom were consulted; the Government disagrees with and opposes the relief requested, as does the Special Master.

/s/ Kenneth N. Barnes
Kenneth N. Barnes

## CERTIFICATE OF SERVICE

I certify that on the date set forth below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

Dated: August 6, 2026.

/s/ Kenneth N. Barnes
Kenneth N. Barnes