**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr.<br><br>EXPEDITED CONSIDERATION REQUESTED |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ISSUANCE OF SUBPOENAS DUCES TECUM (DOC. 248), IN RESPONSE TO THE GOVERNMENT'S OPPOSITION (DOC. 582, No. 5:19-CR-22)**

## INTRODUCTION

The Government's Opposition (Doc. 582 in No. 5:19-cr-22) (the "Opposition") asks the Court to deny Mr. Lindberg the records of his own former companies — records he surrendered to court officers twice, in 2019 and again in 2025 — so that the disputed restitution issues can be resolved on a record "only one side is permitted to see." Doc. 248 at 10. The facts are that no one has these records, not this court, not the special master according their submission, not the government and not the defendant since he handed over these companies. Three features of the Opposition decide this Motion, and all three favor issuance.

**First**, the Opposition concedes that the facts are disputed. The Government acknowledges that "there are likely disputed facts about the prospective value" of the AAPC Preferred, and that "there might be contested factual issues regarding such things as whether and to what extent there was a diminution of value and, if so, who caused it." Doc. 582 at 10–11. Its answer is not that the facts are settled, but that the Court should rule against Mr. Lindberg on the law first, so that the facts never need to be found. That is a merits argument dressed as a discovery objection — and it

inverts the statute. The MVRA commands that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," 18 U.S.C. § 3664(e), upon the de novo determination § 3664(d)(6) requires. A party cannot defeat compulsory process by promising to win on the law questions the evidence would otherwise inform.

**Second**, the Opposition is filed by the wrong party. The Government admits its standing to oppose these subpoenas "is an open question in the Fourth Circuit." Doc. 582 at 2 n.1. Rule 17(c)(2) commits objections of undue burden and privilege to the *recipients* — who may move to quash — and the Government's own principal authority says exactly that. *United States v. You*, 2024 WL 1404378, at *3 (E.D. Tenn. Apr. 1, 2024) (the recipients "will have the opportunity to oppose Defendant's subpoenas" under Rule 17(c)(3)). The only custodian to have appeared is the Special Master himself — the fee-interested officer whose own administration is under review and whose own records are among those sought — and his Response asks the Court to deny production while contending that the companies' records are not his to produce (Doc. 266) — a contention Defendant disputes, because the Special Master stepped into Defendant's shoes as record owner and can compel their production — and expressly reserving any burden or privilege objection for a later motion to quash. None of the remaining custodians has appeared. That posture is not a ground for a merits denial now; it is precisely why Rule 17(c)(2)'s machinery — issuance, followed by any recipient's motion to quash — should be permitted to operate.

**Third**, the Opposition confirms why compulsory process is indispensable: the Government has adopted, wholesale, the report of the very officer whose records are sought. It "agrees with each of the Special Master's recommendations," Doc. 582 at 9 n.4, offers the Special Master's Final Report as the answer to all seventeen disputed issues, and simultaneously opposes production of the underlying workpapers, ledgers, and communications that would permit the Court — or Mr.

Lindberg — to test that report. As set forth in Mr. Lindberg's Motion to Declare the Special-Master Reference Unconstitutional as Applied (Doc. 269, filed July 31, 2026) and his Motion to Adopt All Prior Motions as if Filed After the Final Report and to Hold the Report in Abeyance (submitted herewith), see Doc. 267, ¶ 3, the Special Master is a fee-interested officer whose own conduct — including the off-record Beckett disposition, Docs. 256, 260 — is among the matters the records concern. A restitution judgment built on the untested report of a conflicted custodian, entered while the defendant is denied the records that would test it, is not the process §§ 3664(d)(6) and (e) describe — particularly now that restitution is recognized as criminal punishment. *Ellingburg v. United States*, 607 U.S. 163, 146 S. Ct. 564 (2026). The Special Master's own Response confirms why compulsory process is indispensable: he contends that the companies whose books and records the accounting requires are "none of which are under the Special Master's control," Doc. 266, and that his sole authority over them "is the power to appoint two directors to the board of NHC," Doc. 268 — a contention Defendant disputes, since the Special Master took Defendant's record-ownership and voting rights by assignment and through the AAPC voting trust and can compel production, which he refused. But even taken at his word, those records are then held by third parties beyond the reach of this Court, the Special Master, and the Government alike, and can be reached only through the process the Opposition and the Special Master's Response together ask the Court to deny. **That the Government has adopted the Special Master's recommendation does not solve the problem: under 18 U.S.C. § 3664(e) the Government — not the Special Master — bears the burden of proving loss and causation, and it cannot discharge that burden by endorsing the report of a conflicted, fee-interested fiduciary whose own conduct the records concern. Adopting a fiduciary-tainted report imports the taint; it does not supply the proof the statute requires.**

## ARGUMENT

### I. The Nixon Factors Are Satisfied; the Opposition's Overbreadth Rhetoric Ignores What the Exhibits Actually Request

The Opposition's "fishing expedition" refrain never engages the Exhibits. The schedules identify discrete, dated, documented transactions: the November 22, 2018 Ares letter of intent; the February 8, 2019 Oaktree $1.0 billion "Global Solution"; the June 27, 2019 MOU; the pre-maturity sale of Zero-Coupon Bonds with a face value of $1,006,239,867 for approximately $394 million; the December 2022 AAPC/ULICO transfer; the April 2022 AAPC Refinance and its approximately $44,000,000 of preferred-equity interest payments; the September 2025 Clanwilliam sale and its $23,500,000 Vista distribution; and the Beckett transaction, its claimed authority, and the application of its proceeds. Doc. 248-1 through 248-6. These are not "the title of a document and conjecture as to its contents"; they are known transactions whose paper sits in identified custodians' files, with the record already documenting Mr. Dinius's personal role in them. Doc. 248 at 4–5 (the "we will contact the guaranty associations and move directly to liquidation. You know what that means" e-mail; Barclays zero-coupon pricing "provided . . . through Dinius"). *Nixon*'s specificity requirement asks for reasonable identification of categories of admissible evidence — not item-by-item Bates numbers for records the movant has never been permitted to see. 418 U.S. at 700.

Relevance is established by the Government's own chart. Every one of its six "categories" of Mr. Lindberg's seventeen issues, Doc. 582 at 9, maps onto the subpoena schedules: starting IALA loan balances (Category II) → the ILA workpapers and reconciliations (Ex. C ¶ 1; Ex. A ¶¶ 21, 28); credits for value transferred but not yet monetized (Category III) → the AAPC Preferred

valuations (Ex. A ¶ 7; Ex. C ¶¶ 5, 14); credits for payments received (Category IV) → the receipt-and-application ledgers (Ex. A ¶¶ 15, 18, 20; Ex. E ¶¶ 1–3); diminution and causation (Category V) → the valuations from the $454 million baseline forward, the four blocked monetizations, the zero-coupon disposition, and the below-valuation sales (Ex. A ¶¶ 1–6, 10–11, 17); shared responsibility (Category VI) → the estates' governance and management records. The Government cannot classify the disputes and then deny that records addressed to its own classifications are relevant.

Admissibility (business records of the estates and their fiduciaries, Fed. R. Evid. 803(6)) and good faith (production for the evidentiary hearing the statute reserves to this Court, on issues where Mr. Lindberg bears the burden) are addressed in the Motion, Doc. 248 at 8–9, and the Opposition offers no answer beyond adjectives. As for the Government's reliance on the Court's pretrial ruling in the public-corruption case (Doc. 104 in 5:19-cr-22): the posture could not be more different. That request sought trial discovery. This request seeks the *defendant's own former companies' books and records* — records he surrendered under court orders — from the custodians who now hold them, for a hearing at which the statute assigns *him* the burden of proving offsets and credits. *United States v. Karam*, 201 F.3d 320, 327 (4th Cir. 2000); *United States v. Ritchie*, 858 F.3d 201, 211 (4th Cir. 2017). A statutory scheme that assigns a party the burden of proof entitles that party to process adequate to carry it. Doc. 248 at 9–10.

## II. The Records Are Not "Already in Defendant's Possession" — and the Government Identifies Not One Document That Is

The Opposition asserts that "much of the requested information is already in Defendant's and his counsel's possession," Doc. 582 at 1, but identifies not a single document. It could not: custody and control of the companies and their records passed out of Mr. Lindberg's hands twice — in 2019, under the MOU and the rehabilitation, to the Rehabilitator's team under Mr. Dinius;

and in 2025, under the Appointment Order (Doc. 56), to the Special Master's administration, where they are held by or through NewHoldCo. Doc. 248 at 2, 5. The "16 months of collaboration" the Government invokes consisted of meetings and calls — not productions of general ledgers, ILA workpapers in native format, valuation workpapers, board minutes, or fee records. If the Government believes specific responsive records were actually produced to the defense, the cure is simple and standard: the custodians may so certify, category by category, and production of those categories becomes a nullity. What the Government may not do is defeat compulsory process with an unsworn generality that the movant has "enough." The Special Master's Response removes any doubt. He contends that NHC "and the hundreds of companies under the NHC umbrella" are "none of which are under the Special Master's control," Doc. 266 — a contention Defendant disputes, the Special Master having taken Defendant's record-ownership by assignment and being able to compel production — and that the communications the subpoena would reach are largely those of persons who "have no direct knowledge of the facts and circumstances critical to the restitution determination," id. Records the Special Master says he neither controls nor can vouch for are not "already in Defendant's possession"; and his parallel assertion that his recommendations rest in large part on documents "Katten provided," id., only confirms that the Report was built on a partial, defense-supplied record rather than the complete books and ledgers the subpoenas would produce.

The related "change of counsel" argument gets the sequence backwards. New counsel did not create the evidentiary gap; the gap exists because the records never left the custodians' hands, no matter who represented Mr. Lindberg. And the suggestion that a defendant's choice of counsel should cost him the evidence that carries his statutory burden has no footing in Rule 17, the MVRA, or the Sixth Amendment.

## III. The Timing Argument Is Both Wrong and Revealing

The Government's untimeliness argument rests on the 90-day marker of 18 U.S.C. § 3664(d)(5) (August 24, 2026). But the Supreme Court has held that the 90-day provision protects *victims* from undue delay in the entry of restitution; missing it does not deprive the court of power to act, and it exists "primarily to help . . . victims," not to arm the Government with a discovery-preclusion device against the defendant. *Dolan v. United States*, 560 U.S. 605, 611–13 (2010). A deadline designed to protect victims cannot be deployed to deny the defendant the evidence the statute requires the Court to weigh — least of all where every American policyholder has been paid in full.

Nor is the Motion "eleventh hour." The Special Master's Final Report issued in late July; the draft supplement was circulated to defense counsel on or about July 16–17, 2026, Doc. 248-2, ¶ 14; and the Motion was filed July 23, 2026 — within days of the report that the Government now offers as the complete answer to every disputed issue. The sequence that actually consumed the calendar is the Government's: it has declined to respond on the merits to any of the causation, foreseeability, offset, or amount issues Mr. Lindberg has raised, Doc. 267, ¶ 4, while the Special Master — whose recommendations the Government adopts — continued to supplement his report. If the schedule is now tight, the answer is the sequencing relief sought in the abeyance motion, Doc. 267, ¶ 3, and a return date set by the Court — not the extinguishment of the defendant's right to the evidence. Early return dates are Rule 17(c)'s design. *United States v. Bendawald*, 2025 WL 711725, at *3 (D. Idaho 2025).

## IV. "All Legal, No Factual" Is a Merits Ruling the Government Requests in a Discovery Brief

The Opposition's central theme is that the Court can resolve all seventeen issues "on legal, not factual, grounds," Doc. 582 at 8 — while conceding in the same breath that the facts underlying value, diminution, and causation are "likely" and "might be" disputed. Id. at 10–11. Take the Government's own example. Whether the AAPC Preferred transferred to ULICO in December 2022 must be credited now, at its value, or only "if and when ULICO realizes" value, is not a fact-free question: the MVRA offsets restitution by "the value (as of the date the property is returned) of any part of the property that is returned," 18 U.S.C. § 3663A(b)(1)(B)(ii), and requires credit for amounts "later recover[ed] as compensatory damages for the same loss," § 3664(j)(2). Valuation as of a date certain is a quintessential factual determination — one the Court cannot make without the valuations, workpapers, and communications the subpoenas seek, and one on which *Mr. Lindberg* bears the burden. *Karam*, 201 F.3d at 327. The same is true of causation under *Robers v. United States*, 572 U.S. 639, 648–49 (2014): whether the losses flow from the offense or from the estates' intervening, discretionary decisions — the four refused monetizations, the litigation against a prospective buyer, the pre-maturity zero-coupon sales, the below-valuation dispositions — is a record question, not a syllogism. The Government's proposal is that the Court first assume the answer to every mixed question against the defendant and then declare the evidence unnecessary. Section 3664(e) prescribes the opposite order of operations.

## V. Pre-Sentencing Cooperation Did Not Forfeit the Disputes the Bifurcated Process Expressly Reserved

The Opposition's narrative — that Mr. Lindberg praised the process, took his variance, and "changed his tune" — confuses cooperation with capitulation. The parties' own design, which the Government negotiated and the Court adopted, was a bifurcated process: a Preliminary Order at

sentencing, followed by "any necessary hearings to finalize restitution." Doc. 107 at 3. The disputed issues now before the Court are the ones that process reserved. Working collaboratively toward sentencing — and saying so — waived nothing about the reserved disputes; indeed, Mr. Lindberg's Response (Doc. 132) framed the seventeen issues before sentencing occurred. And the material events post-date the statements the Government quotes: the Beckett disposition and its still-undisclosed terms and proceeds, Docs. 256, 260; the New Waiver demand and the Statement Concerning Defendant's Cooperation, Doc. 159; the Final Report and its supplement, Docs. 245, 245-1; and the Supreme Court's confirmation that what is being administered is criminal punishment, *Ellingburg*, 607 U.S. 163. A defendant is entitled to test with evidence what he is asked to accept on faith — particularly after the facts change. As for the Government's footnote that Mr. Lindberg accepted the Special Master's Cell 1.16 recommendation, Doc. 582 at 7 n.3: accepting a recommendation supported by the record is not a waiver of objections to recommendations that are not. Rule 17 does not condition compulsory process on a vow of uniform disagreement.

## VI. Rule 17(c) Applies to These Proceedings, as the Government's Own Authorities Hold

The Government's footnoted suggestion that Rule 17(c) may not reach sentencing-stage proceedings, Doc. 582 at 4 n.2, is refuted by the very case the Government builds its legal standard upon: *You* applied the *Nixon* factors to a sentencing-stage subpoena request. Accord *United States v. Krane*, 625 F.3d 568, 574 (9th Cir. 2010); *United States v. DNRB, Inc.*, 257 F. Supp. 3d 1033, 1038–39 (W.D. Mo. 2017). The restitution determination here is, moreover, no ordinary sentencing ancillary: it is a contested, statutorily mandated evidentiary proceeding in which the Court must resolve disputes de novo by a preponderance, §§ 3664(d)(6), (e), concerning what *Ellingburg* holds is criminal punishment. If compulsory process is unavailable in that proceeding,

then the defendant's statutory burden under *Karam* and *Ritchie* is a burden he is forbidden the means to carry.

## VII. The Privilege and Burden Objections Belong to the Recipients — and the Motion Already Accommodates Them

The Opposition's catalog of anticipated privilege disputes and compliance burdens is asserted on behalf of custodians who have raised neither. Rule 17(c)(2) gives every recipient the right to move to quash or modify; the proposed order requires privilege to be asserted by written log within seven days, Doc. 248-7, ¶ 2; and communications between any custodian and the Government are not privileged in any event. The Special Master is the Court's own officer: his records of a criminal restitution administration "are not his own but the Court's." Doc. 248 at 9. And the professionals' fee and billing records — charged to and paid from the estates — are the estates' business records, directly material to the offset arithmetic. The suggestion that issuing subpoenas to court officers, fiduciaries, and their advisors "harass[es] the victims" inverts reality: the victims are the policyholders, every one of whom has been paid in full; the custodians are the persons who administered — and in the Special Master's case, are compensated from — the estates whose administration is precisely what the Court must now examine.

The Special Master's Response (Doc. 266) is addressed in Defendant's separate Response to the Special Master's Response, submitted herewith.

More importantly, the import of all of these arguments is that restitution rests on guesses of the Special Master, based on documents the court has not seen, the special master claims to not be able to produce, the government does not have and the defendant cannot have because he turned over the companies to the custodians and the special master. This record cannot meet the accounting requirements of MVRA that are a prerequisite to restitution determination.

## CONCLUSION

The Government concedes the facts are disputed, concedes its standing is an open question, and does not deny that the records exist, are held by the custodians, and answer the questions its own chart frames. The Court should grant the Motion, direct the Clerk to issue the six subpoenas in the forms of Exhibits A through F attached to the Motion, and set a return date sufficiently in advance of the evidentiary hearing to permit review, follow-up, and any necessary motion to compel or enforce under Rule 17(g) — so that the de novo determination reserved to this Court proceeds on a record both sides are permitted to see.

Dated: August 6, 2026.

Respectfully submitted,

/s/ Kenneth N. Barnes
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com
*Counsel for Greg E. Lindberg*[1]

[1] Pursuant to LCrR 44.1 and LCvR 83.1 (c)(4), attorney Vivek Ramachandran has not signed this document while his Motion for Pro Hac Vice remains pending.

**CERTIFICATE OF SERVICE**

I certify that on the date set forth below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ _Kenneth N. Barnes_________
Kenneth N. Barnes