**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn, Jr. |

**DEFENDANT'S RESPONSE TO UNIVERSAL LIFE INSURANCE COMPANY'S BRIEF IN RESPONSE TO THE SPECIAL MASTER'S SECOND SUPPLEMENT TO REPORT AND RECOMMENDATION (DOC. 275)**

Defendant Greg E. Lindberg respectfully submits this Response to the brief filed by Universal Life Insurance Company ("ULICO") in response to the Special Master's Second Supplement to Report and Recommendation (Doc. 275). For the reasons set forth below, ULICO's request that Defendant's objections be denied should itself be denied, and Defendant's objections to the Second Supplemental Recommendation (Docs. 280, 281) should be sustained.

## INTRODUCTION

The restitution loss in this case is measured by the balances of the affiliated loans — not by policyholder losses. Defendant and the Special Master agree that "the principal balance of the Affiliate Investments, *rather than policyholder losses*, is an appropriate methodology for calculating restitution." Doc. 132 at 5. The Special Master's own Report frames every disputed item accordingly, as a "remaining unpaid principal balance owing" on those affiliated loans, including the $339 million the

Special Master attributes to ULICO. Doc. 245 at 6. The only question ULICO's brief raises about the amount is whether the affiliated-loan balance it addresses has been satisfied by the value Defendant has already returned. It has.

ULICO's brief is directed largely to the *order* in which the payees are paid — a priority question under 18 U.S.C. §§ 3664(j)(1) and (i). That allocation does not change the amount Defendant owes, and Defendant takes no position on inter-payee priority. Defendant does not adopt ULICO's framing of the loss. The measure of restitution is the affiliated-loan balances the Special Master himself sets out, reduced by the mandatory offsets and credits for the value Defendant has returned. 18 U.S.C. §§ 3663A(b)(1)(B)(ii), 3664(j)(2).

The three points ULICO presses against Defendant — the AAPC preferred-equity credit, the Agera loss, and the preferred-dividend credit — do not withstand scrutiny, and each turns on the very records the Government and the Special Master are simultaneously resisting producing (Doc. 248). Defendant addresses each below. ULICO's characterizations of Defendant's spending and litigation conduct are irrelevant to the accounting the Court must perform, in which the Government — not Defendant — bears the burden of proving each victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).1

1Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this Response without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, *see Ellingburg v. United States*, 607 U.S. ___, 146 S. Ct. 564 (2026), Defendant contends that the Sixth Amendment requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond a reasonable doubt, not by the Court by a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue

## ARGUMENT

### I. The Measure of Loss Is the Affiliated-Loan Balances, and Each Balance ULICO Addresses Has Been Satisfied by the Value Defendant Returned.

Because Defendant and the Special Master measure restitution by the affiliated-loan balances (Doc. 132 at 5; Doc. 245 at 6), the dispositive question for the balance ULICO addresses is whether it has been satisfied by the value Defendant returned. It has: the $339 million balance the Special Master attributes to ULICO was satisfied dollar-for-dollar by the AAPC preferred equity ULICO accepted — par value $352,906,240 — as set out in Part II below.

Framed correctly, the mandatory offset and anti-double-recovery provisions decide the amount. Restitution must be reduced by "the value . . . of any part of the property that is returned," 18 U.S.C. § 3663A(b)(1)(B)(ii), and no victim may be compensated twice for the same loss, § 3664(j)(2). *United States v. Ritchie*, 858 F.3d 201, 216 (4th Cir. 2017) (the MVRA "does not allow a court to grant a windfall to the victim"). Applying the value already returned against the affiliated-loan balances the Special Master sets out, the balances ULICO addresses are satisfied, and no additional restitution is owed on them.

### II. The $339 Million Balance Attributed to ULICO Is Satisfied by the AAPC Preferred Equity — Which ULICO Holds by Its Own Choice Because It Pays ULICO More Than $35 Million a Year.

---

and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

The $339 million balance attributed to ULICO was satisfied when ULICO accepted the AAPC preferred equity, par value $352,906,240 as of May 26, 2026 — the same figure the Special Master lists in his own table. Doc. 245 at 6 (Issue 3); Lindberg Decl. ¶ 5. Under the Confidential Side Settlement Agreement dated December 19, 2022, and its Amendment dated December 30, 2022 — which resolved ULICO's $524 million civil judgment in *Universal Life Insurance Co. v. Lindberg*, No. 20-cv-681 (M.D.N.C.) — ULICO accepted $25 million in cash and the transfer of the AAPC preferred equity, and the parties agreed that the preferred equity would apply as a dollar-for-dollar credit against the amounts owed, regardless of whether ULICO sells the preferred or holds it. Doc. 132-1, Exs. A & B; Lindberg Decl. ¶ 5. That contractual credit is reinforced by the MVRA, which independently requires that restitution be reduced by "the value . . . of any part of the property that is returned," measured "as of the date the property is returned." 18 U.S.C. § 3663A(b)(1)(B)(ii). At $352,906,240 in par value, the credit exceeds the $339 million balance in full; it is fixed and presently due.

ULICO's contrary position misreads its own agreement. ULICO contends that, "consistent with the Side Settlement Agreement," Defendant "is not entitled to any restitution credit with respect to AAPC Preferred unless and until that asset is monetized," and that a present credit would be "contrary to the agreement between ULICO and Lindberg." Doc. 275 at 13. That is not what the agreement says. The agreement provides that the AAPC preferred applies as a dollar-for-dollar credit "regardless of whether ULICO sells the preferred or holds it." Lindberg Decl. ¶ 5; Doc.

132-1, Exs. A & B. ULICO's "unless and until . . . monetized" condition appears nowhere in the agreement; it is ULICO's litigating gloss, not its bargain. Having accepted the AAPC preferred in exchange for a credit that applies whether it sells or holds, ULICO cannot rewrite the same agreement to defer that credit indefinitely.

Nor does ULICO's complaint that Defendant "failed . . . to provide a valuation of this privately held company as contemplated by the terms of the Side Settlement Agreement" (Doc. 275 at 13) defeat the credit. The value is not genuinely in dispute: the Special Master's own table fixes the AAPC preferred at $352,906,240 in par as of May 26, 2026, Doc. 245 at 6, and ULICO "has not once disputed that the AAPC preferred is worth anything less than its par value." Lindberg Decl. ¶ 5. To the extent ULICO seeks a further valuation, the records that would supply it are held by the Special Master and are the subject of Defendant's pending Rule 17(c) subpoenas (Doc. 248) — access ULICO and the Special Master oppose. A party cannot withhold the valuation records and then fault Defendant for the absence of a valuation.

ULICO and the Special Master would nonetheless defer any credit until "if and when ULICO realizes this value." Doc. 275 at 14; Doc. 245 at 15–16. But ULICO has not been unable to realize the value — it has *chosen* not to. ULICO holds the AAPC preferred by its own election, for its own benefit: the preferred pays ULICO more than $35 million a year in payment-in-kind dividends, and its value has climbed from $218 million at the 2022 transfer to more than $352 million today, and is projected to reach approximately $400 million by the end of next year. Lindberg Decl. ¶ 5. ULICO thus retains an appreciating, income-producing asset that it accepted in full satisfaction

of its balance — and it "has not once disputed that the AAPC preferred is worth anything less than its par value." *Id*. A victim that has been made whole, and that elects to hold the returned asset because it yields more than $35 million a year and keeps appreciating, is not also entitled to collect the same balance a second time in restitution. That is the windfall the MVRA forbids. *Ritchie*, 858 F.3d at 216.

The statute fixes the credit "as of the date the property is returned," 18 U.S.C. § 3663A(b)(1)(B)(ii) — not as of some future liquidation ULICO may postpone indefinitely. *Robers* confirms the point: a victim who "chooses to hold collateral rather than to reduce it to cash within a reasonable time . . . must bear the risk of any subsequent decline in the value of the collateral, because the defendant is not the proximate cause of that decline." *Robers v. United States*, 572 U.S. 639, 647 (2014) (Sotomayor, J., concurring). Here ULICO has chosen to hold — and the value has only risen — so ULICO enjoys the upside of its own election and bears any risk of it. Deferring the credit "if and when" ULICO elects to sell would let ULICO keep a $352-to-$400 million appreciating asset that pays it more than $35 million a year *and* collect the full $339 million a second time from Defendant — precisely the double recovery § 3664(j)(2) and *Ritchie* forbid.

## III. The Agera Loss Is Not Proximately Caused by the Offense of Conviction and Presents, at Minimum, a Disputed Factual Question for the Hearing.

ULICO urges the Court to charge Defendant with the approximately $129 million Agera loss (Doc. 275 at 13–15). The MVRA, however, limits restitution to losses "directly and proximately caused by" the offense of conviction, 18 U.S.C. §

3663A(a)(2); *Hughey v. United States*, 495 U.S. 411, 413 (1990) — not to every investment that later declined. And by ULICO's own account, the Agera loss did not flow from the offense: Agera "only became troubled after" a change in management and was "forced into bankruptcy on October 4, 2019" — after Defendant's April 1, 2019 indictment, and after Defendant "chose not to continue funding the restructuring of Agera." Doc. 275 at 14. A loss that crystallized months after the charged conduct, upon intervening decisions concerning a company then outside Defendant's operational control, is not the proximate result of the offense. *Paroline v. United States*, 572 U.S. 434, 445–46 (2014); *Robers v. United States*, 572 U.S. 639, 646 (2014) (intervening events — such as a donation of collateral or its "sale to a friend for a nominal sum" — "could break the causal chain").

That the Agera exposure was, moreover, a pre-existing risk Defendant took on through the ULICO reinsurance structure only underscores the point. Defendant's own filing records that he "bargained for and received from ULICO [a] 100% Preferred Debt allowance because it was clear . . . that the Agera Energy asset was a material risk to the Reinsurance Trust Account" at the time the parties' agreements were signed in 2017. Doc. 136-3 ¶ 42 (reproduced at Doc. 275 at 16). ULICO invokes that same statement to contend that Defendant "actively pursued" Agera (Doc. 275 at 14–15) — but whether Defendant acquired the exposure or inherited it, ULICO's argument at most raises a disputed question of fact; it does not establish that the offense of conviction proximately caused a loss that materialized years later on others' intervening decisions. *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996).

At the very least, whether the Agera loss was proximately caused by the offense of conviction — or by a pre-existing exposure and intervening third-party events — is a contested question of fact for this Court to resolve de novo, on the evidentiary record, 18 U.S.C. § 3664(d)(6), not imported wholesale from the civil testimony ULICO obtained in *Universal Life Insurance Co. v. Lindberg*, No. 20-cv-681 (M.D.N.C.). That is one more reason the Court should permit the Rule 17(c) production Defendant has requested. Doc. 248.

## IV. ULICO Provides No Basis to Deny the Preferred-Dividend Credit; Its Own Complaint That It Lacks the Documents Confirms Why Production Is Required.

ULICO asks the Court to reject the Special Master's proposed $3 million reduction to PBLA/ULICO — a reduction that partially credits Defendant's documented preferred dividends paid to PBLA (Doc. 132 at 16–19) — "unless and until Lindberg provides . . . detailed information with respect to the date and amount of each payment, the payor and recipient . . . , and documents sufficient to identify the specific reason for the transfer." Doc. 275 at 13. Defendant is entitled to a credit for value actually returned. 18 U.S.C. §§ 3663A(b)(1)(B)(ii), 3664(j)(2).

ULICO's objection is self-defeating. It complains that it "has not been given an opportunity to examine the documents in the possession of the Special Master and PBLA related to the preferred dividends at issue." Doc. 275 at 13. Those documents are precisely what Defendant's Rule 17(c) subpoenas would produce — records that left Defendant's hands when he transferred control of these assets to the Rehabilitator and later to the Special Master, and to which he has no access. Doc.

248; Lindberg Decl. ¶ 6 (Defendant has had no access to AAPC's financial records since control transferred, and his motions for access remain pending and opposed; see Docs. 202, 248). The remedy for a documentary dispute is production and a hearing, not denial of a credit the statute makes mandatory.

## V. ULICO's Characterizations Are Irrelevant to the Accounting, and "Zero" Is the Product of the Statute, Not Rhetoric.

ULICO's characterizations of Defendant's personal spending and litigation conduct (Doc. 275 at 4–5) have no bearing on the questions the Court must decide: the affiliated-loan balances that measure each victim's loss, less the mandatory offsets and credits for value returned, proved by the Government by a preponderance of the evidence. 18 U.S.C. §§ 3664(e), 3663A(b)(1)(B)(ii); *Hughey*, 495 U.S. at 413.

ULICO's demand that the Court "reject Lindberg's position that his restitution obligations should be zero" (Doc. 275 at 3) mistakes a legal conclusion for hyperbole. Zero is the arithmetic result of applying the mandatory credits — including the AAPC preferred equity ULICO holds — together with the proximate-cause limitation on disputed items such as Agera, against the affiliated-loan balances the Special Master sets out. Docs. 172, 234; Lindberg Decl. ¶ 5. A defendant who has returned value meeting or exceeding the balances that measure the loss owes no more. *Ritchie*, 858 F.3d at 216.

## CONCLUSION

For the foregoing reasons, ULICO's request that Defendant's objections be denied should itself be denied. Defendant's objections to the Second Supplemental

Recommendation (Docs. 280, 281) should be sustained; the AAPC preferred-equity credit and the documented offsets should be applied as of the dates the property was returned; the Agera loss should be excluded or, at a minimum, set for determination at the evidentiary hearing; and no final order of restitution should enter until the Court has resolved the disputed issues de novo, on a complete record, under 18 U.S.C. §§ 3664(d)(6) and (e).

Dated: August 13, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
barnesatty@aol.com

/s/ Vivek Ramachandran
Vivek Ramachandran
Dhamma Law PLLC
418 Broadway, Suite N
Albany, NY 12207
(202) 860-4084
vramachandran@dhammalaw.com
*Admitted Pro Hac Vice*

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 13, 2026.

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*