**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>GREG E. LINDBERG,<br>Defendant. | Case No. 3:23-CR-48-MOC<br>Case No. 5:19-CR-22-MOC<br><br>Judge Max O. Cogburn,Jr. |

**DEFENDANT GREG E. LINDBERG'S REPLY IN SUPPORT OF HIS MOTION TO RECOUP THE DISTRIBUTION TO VISTA**

Defendant Greg E. Lindberg respectfully submits this Reply in support of his Motion to Recoup the Distribution to Vista (Doc. No. 238) and in response to the Opposition filed by the Rehabilitator of Vista Life & Casualty Reinsurance Company's Protected Cell 1.16 ("Cell 1.16") (Doc. No. 274).

## II. INTRODUCTION

Cell 1.16's Opposition does not dispute the fact that drives this Motion. The Special Master/Receiver, whom this Court appointed under 18 U.S.C. § 3664(d)(6), has concluded that Vista is not a victim. In his Second Supplement, the Special Master/Receiver states that he "does not recommend that the Court treat Vista as a Person Due Restitution in this Case," explaining that the Defendant "does not appear to have misrepresented the true nature of the Affiliated Investments to Vista" as he did to the actual victims. Doc. No. 245, at 33–34. Cell 1.16 does not squarely contest that conclusion. It argues principally that Vista's victim status is irrelevant to the distribution, and defends Vista's reliance on the ratings only in the alternative—on a theory its own concessions defeat. *See infra* Parts II, IV. Its

position reduces to this: that it may keep $23,520,710 in proceeds from the sale of a Primary Restitution Asset even though it is not a victim, because (i) the Defendant consented to the distribution and (ii) the distribution was "not restitution." Neither answer defeats recoupment.

The relief bears restating. The Defendant does not ask the Court to "credit" the Vista payment against his restitution obligation. He asks the Court to do the opposite—to recoup those estate proceeds from a conceded non-victim and apply them to the actual victims, where they will properly reduce the amounts owed. That request lies squarely within the Court's continuing authority over its own restitution process. 18 U.S.C. § 3664(o); Doc. No. 161.[FN1]

## III. ARGUMENT

### A. I. The Special Master/Receiver's Conclusion That Vista Is Not a Victim Is Uncontested, and a Non-Victim's Retention of Estate Proceeds Is a Recoupable Windfall.

The Special Master/Receiver has determined that Vista is not a Person Due Restitution. Doc. No. 245, at 33–34. He has taken that position consistently: he recommended that "the Court not award restitution to Cell 1.16," Doc. No. 206, at 2, explaining that Cell 1.16's principals "were well apprised of the defendant's affiliated loan investing strategy, such that there was nothing for the defendant to hide," *id.* ¶ 3, and his fuller victim analysis appears in his initial Report, *see* Doc. No. 106-3, at 22–24. Cell 1.16 does not squarely defend Vista's victim status against that finding. Its principal submission is that victim status is irrelevant to the distribution. Doc. No. 274, at 5–9. It defends Vista's reliance on the ratings only in

the alternative, Doc. No. 274 § II.B, and that alternative fails for the reasons set out in Part IV. On the dispositive question, then, that conclusion stands unrebutted: Vista is not a victim.

The Clanwilliam proceeds are proceeds of a Primary Restitution Asset—the Order so finds, Doc. No. 68 ¶ 2 ("Clanwilliam is among the 'Primary Restitution Assets'")–that the Special Master/Receiver marshaled for the benefit of victims. Diverting $23,520,710 of those proceeds to a party the Special Master/Receiver has now concluded is not a victim confers a windfall on a non-victim at the expense of the actual victims. Restitution law does not tolerate that result. Restitution is measured by, and limited to, a victim's actual loss, *United States v. Steele*, 897 F.3d 606, 611 (4th Cir. 2018); *Hughey v. United States*, 495 U.S. 411, 413 (1990), and a non-victim has no loss to compensate. The Court's continuing authority over restitution permits it to correct the distribution and direct the funds to those actually entitled. 18 U.S.C. § 3664(o); Doc. No. 161.

### B. II. Consent to an Interim Compromise Did Not Waive the Victim Determination; the Consent Order Expressly Reserved It.

Cell 1.16's lead argument is that the Defendant consented to the distribution and cannot now challenge it. Doc. No. 274, at 5–8. But the Consent Motion and the Order expressly reserved the victim question rather than resolving it. The Order directs that "[a]ll amounts distributed under this Order to the North Carolina Insurance Companies, the Bermuda Insurance Companies, and Vista (to the extent Vista is determined to be a victim entitled to restitution) shall be credited toward

Defendant's ultimate restitution obligations as determined by a future order of restitution entered by this Court." Doc. No. 68 ¶ E; accord Doc. No. 66 ¶ 21. The Special Master/Receiver made the same reservation in the motion itself, acknowledging that he was "unsure whether [he] will recommend that the Court treat Vista as a victim in this proceeding" and describing Vista's "potentially 'out of order' distribution." Doc. No. 66 ¶ 26 n.8. An interim distribution made to consummate a sale, on the express understanding that victim status remained open, is not an adjudication that Vista is a victim entitled to retain the funds.

Cell 1.16's own authority confirms the point. Under *Consumer Fin. Prot. Bureau v. Klopp*, the scope of a consent order is discerned "within its four corners." 957 F.3d 454, 463 (4th Cir. 2020) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). Here, the four corners of the Order contain the reservation. And *Klopp* holds that the four-corners rule "does not make improper the use of certain aids to construction," including "[t]he circumstances surrounding the formation of the consent order." *Id.* at 463 n.4. Those circumstances—an admittedly "out of order" distribution made to secure Vista's "cooperation" so that the sale could close, Doc. No. 66 ¶ 26 n.8—confirm that the payment resolved nothing about whether Vista is a victim.

Consent to a mechanism designed to move value to victims is not consent to a non-victim's permanent retention of estate proceeds once the reserved condition fails. The Defendant's consent to the Clanwilliam transaction was itself qualified: he agreed to the sale "although reserving his right to argue that, for restitution

purposes, [the Clanwilliam Group's] value was greater than the purchase price of the sale transaction." Doc. No. 245, at 3. And in opposing Cell 1.16's claim, the Defendant expressly reserved the still-open restitution determination–including "causation, offsets, and credits"—which, he noted, "will further change the restitution determination." Doc. No. 227, at 4 n.1. A defendant who consents to an interim distribution while reserving these very questions has not waived them; and in any event, the Court's statutory authority over restitution is not waived by a defendant's consent to an interim distribution. 18 U.S.C. § 3664(o). Nor does the Defendant's prior reliance on the Clanwilliam compromise estop this Motion: his consistent position has been that estate value should reach victims, and recouping funds paid to a non-victim so that they reach the actual victims advances that very position.

Consent cannot supply authority the restitution statutes withhold. Because "a court's power to order restitution is statutory in origin," "a defendant's consent to a particular restitution order cannot, without more, authorize a restitution order not authorized by the statutory source." *United States v. Broughton-Jones*, 71 F.3d 1143, 1149 (4th Cir. 1995). A restitution order that exceeds its statutory authority "is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum," *United States v. Davis*, 714 F.3d 809, 812 (4th Cir. 2013) (quoting *Broughton-Jones*, 71 F.3d at 1147), and such an illegal order falls "outside the scope of a defendant's otherwise valid appeal waiver," *Broughton-Jones*, 71 F.3d at 1147. Restitution reaches only victims of the offense of conviction. *Hughey*, 495 U.S. at

413. The narrow exception recognized in *Broughton-Jones* is a formal restitution term embodied in a plea agreement, *see id.* at 1149; the Defendant's informal consent to an interim distribution order is not that. It follows that, to the extent the $23,520,710 is defended as restitution credited toward the Defendant's obligations, *see* Doc. No. 68 ¶ E, the Special Master/Receiver's determination that Vista is not a victim renders that award unauthorized—and the Defendant's consent to the distribution can neither authorize it nor shield it from the Court's correction.

### C. III. Equitable Mootness Is a Bankruptcy-Appeal Doctrine With No Application Here.

Cell 1.16 argues that recoupment is barred by "equitable mootness." Doc. No. 274, at 12. That doctrine is confined to appellate review of consummated bankruptcy reorganization plans. As the Fourth Circuit has explained, it is "[a]pplied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments," and is invoked when it becomes impractical "to upset the plan of reorganization." *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). Every authority Cell 1.16 cites is a bankruptcy appeal. *See In re Castaic Partners II, LLC*, 823 F.3d 966 (9th Cir. 2016). None applies the doctrine to limit a district court's continuing statutory authority over criminal restitution, and Cell 1.16 identifies no case doing so.

The doctrine's own premise—that relief has become impractical—fails on Cell 1.16's own facts. It concedes that $20 million remains identifiable in a USAP reserve account. Doc. No. 274, at 12. Recoupment may be ordered as an obligation of Vista, and credited to the actual victims' restitution, without any need to trace or

"unscramble" particular dollars. The eggs are not scrambled; the funds are known and located.

*United States Dep't of Treasury v. Fabe* is inapposite. It addresses whether a state insurer-priority statute is reverse-preempted under the McCarran-Ferguson Act—a question of how an insolvent insurer's estate is ranked among competing claimants. 508 U.S. 491 (1993). It says nothing about whether a federal court may recoup the proceeds of a federal restitution asset that were paid to a non-victim. The Vermont priority statute Cell 1.16 invokes, 8 Vt. Stat. Ann. § 7081, governs the internal distribution of an insolvent insurer's estate; it does not immunize restitution-asset proceeds from this Court's authority under Section 3664.

### D. IV. Cell 1.16's Opposition Concedes the Double Recovery and the Overstatement.

Cell 1.16 contends that any challenge to the amount of its claim is "premature." Doc. No. 274, at 13. But its Opposition concedes the very defects the Motion identifies. Cell 1.16 states that it "seeks restitution on the same basis as the North Carolina Insurers based on the same loans." *Id.* That is the double recovery restitution forbids: the same loans cannot be awarded twice. *Steele*, 897 F.3d at 611. The prematurity Cell 1.16 describes, moreover, exists only because the Special Master/Receiver already treats it as a non-victim, Doc. No. 245, at 33–34—a reason to deny the claim, not to defer it.

Finally, Cell 1.16's alternative reliance theory collapses on its own concessions. Cell 1.16 admits that it relied on the ratings in its financial statements through December 31, 2018. Doc. No. 274, at 9. The 2017–2018 correspondence

therefore falls within the very period of claimed reliance, and it shows that Cell 1.16's own principal knew, contemporaneously, both the affiliated character of the investments and their sub-investment-grade impairment. Cell 1.16 has also conceded that its principal was no passive recipient of ratings but actively worked to procure them: in its Reply, it acknowledged that its principal sought "to obtain ratings for loans then in the USAP trust – so that USAP could take reserve credit," and that he wrote it was "imperative to obtain ratings." Doc. No. 233, at 3. A principal for whom obtaining favorable ratings was "imperative" to his affiliate's regulatory capital did not innocently rely on those ratings as a neutral measure of value; he procured them.

## IV. CONCLUSION

For these reasons and those stated in the Motion, the Court should recoup the amount distributed to Vista, direct that it be applied to the restitution owed to the actual victims, deny Cell 1.16's request to be treated as a restitution victim, reject its $131,207,799[1] claim as overstated and duplicative, and set the matter for an evidentiary hearing.

[Signature page follows.]

[1] The Order directed a distribution of $23,520,710 to Vista. Doc. No. 66 ¶ 20(d)(iii). Cell 1.16 represents that the amount actually received was $22,859,993.97. Doc. No. 274, at 12. The Defendant seeks recoupment of the amount the Court finds was in fact distributed.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
barnesatty@aol.com

/s/ Vivek Ramachandran
Vivek Ramachandran
Dhamma Law PLLC
418 Broadway, Suite N
Albany, NY 12207
(202) 860-4084
vramachandran@dhammalaw.com
*Admitted Pro Hac Vice*

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 13, 2026

Respectfully submitted,

*/s/ Kenneth Barnes*
Kenneth Barnes
*Counsel for Greg E. Lindberg*