**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREG E. LINDBERG,<br><br>Defendant. | Case No. 5:19-cr-00022-MOC-DCK<br><br>Judge Max O. Cogburn, Jr. |

## DEFENDANT'S OBJECTIONS AND RESERVATIONS REGARDING THE AUGUST 10, 2026 MOTION HEARING

## INTRODUCTION

Defendant Greg E. Lindberg respectfully submits these Objections and Reservations concerning the motion hearing held before this Court on August 10, 2026, and the Court's oral rulings, statements, and directions at that hearing. The official transcript was reported by the Court's reporter and certified on August 21, 2026, and Defendant files these objections and corrections promptly upon its availability, as counsel advised the Court he would do. Defendant files this document out of an abundance of caution and to make the record complete; nothing in it waives, and it is intended to preserve, every objection, argument, and issue Defendant has raised or is entitled to raise, whether or not it was reached at the hearing. Where the Court ruled from the bench, Defendant states his objection; where the Court did not reach or did not permit argument on a matter, Defendant reserves and preserves it. Citations to the transcript are given as "Tr. __:__" (page and line).

Defendant files these Objections and Reservations for a further and specific reason. At the August 10 hearing the Court denied, from the bench and without

argument, Defendant's Motion to Enforce the Plea Agreement, Preserve Counsel Access, and Require Conflict-Free Government Counsel (Docs. 201, 202). Tr. 11:6–11. Because that motion was decided without the argument or the record it required, Defendant sets out below, and expressly preserves, the issues that should have been heard and argued on it — including the disqualification of Government counsel who are necessary witnesses on the very causation questions now before the Court, the enforcement of the plea and bifurcation agreements, and Defendant's access to his own counsel and to the case record. None of those issues was resolved on the merits, and Defendant does not waive any of them.

## OBJECTIONS AND RESERVATIONS

### I. Defendant objects to the summary denial of the Motion to Enforce the Plea Agreement and to Require Conflict-Free Government Counsel (Docs. 201, 202), which was denied without argument, and preserves the issues that should have been heard on it.

The Court denied Docs. 201 and 202 from the bench at the outset of the hearing, before any argument. When Government counsel raised "the motion to disqualify me and Ms. Freeman," the Court responded, "That's going to be denied," Tr. 11:6–10, and later characterized the motion as "dead on arrival on disqualifying these folks," stating that Government counsel had "done nothing to be disqualified in this case," Tr. 12:9–13. No argument was heard, no evidence was taken, and no findings were made. Defendant respectfully objects. The motion raised disqualification, plea-enforcement, and counsel-access questions that turn on a factual record, and it could not be resolved on the papers, still less denied before argument. Defendant preserves each of the following grounds for review.

### A. Government counsel are necessary witnesses on the dispositive causation issue now before the Court, and the advocate-witness conflict cannot be resolved without a record.

The central disputed question in this restitution phase is causation — whether the offense of conviction, rather than intervening events, caused the losses the Government seeks to impose. On that question, Government counsel are themselves fact witnesses. Defendant's causation showing includes evidence that a third party, Ares, agreed to acquire the relevant entities in a transaction that would have made policyholders whole, and that the transaction was blocked by the Government: as counsel explained at the hearing, a contemporaneous e-mail from the companies' chief financial officer, Christa Miller, states that "somebody with power — the government, apparently — called up Ares and blocked that transaction." Tr. 19:23–20:2. That intervening act is now squarely at issue in Defendant's Motion for a Determination That No Restitution Is Owed (Doc. 234). At the hearing, Government counsel did not stand apart from that factual record; he vouched for it, representing to the Court from personal knowledge what the Ares discovery contained — that "[i]n discovery Ares produced documents to the government … something like 800 of them," and that there are "302s from the FBI agents about various communications and meetings with Ares." Tr. 44:7–10. A prosecutor who is a necessary witness to the very intervening-cause events that determine the amount of restitution ought not also be the advocate opposing that defense. See N.C. R. Prof'l Conduct 3.7 (advocate-witness rule); 28 U.S.C. § 530B (subjecting Government attorneys to state rules of professional conduct). And a prosecutor's duty in a criminal case "is not that it shall

win a case, but that justice shall be done"; while he "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). Whether the prosecutors' dual role as advocates and witnesses on causation requires their disqualification is a question that could not be answered "dead on arrival," and Defendant preserves it.

**B. The plea agreement and the parties' bifurcation agreement are enforceable, and their enforcement was not adjudicated.**

Docs. 201 and 202 also sought enforcement of the plea agreement and of the parties' agreement to bifurcate the restitution proceedings. Those agreements are binding: "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). As counsel represented at the hearing, the restitution proceeding "was actually part of a bifurcation process where … [d]efense and the government … got together and said this restitution process is going to go on longer," so that "the hearing came first and then the restitution came after that," and "this was never meant to be a 90-day process." Tr. 35:16–24. Enforcement of the plea and of that bifurcation agreement was not adjudicated on the merits at the hearing, and Defendant preserves it.

**C. Defendant's access to his own counsel and to the case record remains unresolved and is preserved.**

The motion further sought to preserve Defendant's access to his counsel and the case record. That relief overlaps with Defendant's Emergency Motion Directing the Bureau of Prisons to Permit Daily Access to Counsel, a Computer, and the Case Records (Doc. 225), which remains pending. As the hearing reflected, much of the

delay in this matter was attributed to unresolved questions about who Defendant's counsel were and the conditions of Defendant's access to them, Tr. 11:23–12:8 — the very conditions Docs. 201, 202, and 225 sought to fix. A defendant confronting a $1.655 billion restitution demand while incarcerated is entitled to a meaningful opportunity to consult with his counsel and review the record. Defendant preserves that right.

**D. Defendant preserves any claim of prosecutorial overreach or vindictiveness arising from the manner of the Government's participation.**

To the extent the Government's conduct in this restitution phase — including its refusal to answer Defendant's dispositive motions issue by issue while continuing to enlarge the record against him, and its role in the intervening events described above — gives rise to a claim of prosecutorial overreach, Defendant reserves it. *See United States v. Goodwin*, 457 U.S. 368 (1982); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) (a prosecution must be conducted by a disinterested prosecutor). Defendant does not presently move on this ground, but preserves it against waiver.

**E. The change in counsel was compelled by the Special Master/Receiver's own conduct and does not excuse the Government's failure to respond.**

The Court attributed the Government's failure to respond to Defendant's motions to the unresolved question of who Defendant's counsel were, explaining that once "we get who the real lawyers are … then they can respond to motions that you all have filed." Tr. 12:3–8; see Tr. 47:13–48:2. Defendant respectfully objects to that

rationale and preserves the following. First, the change in counsel was not a litigation tactic; it was compelled by the Special Master/Receiver's own conduct. The Special Master/Receiver told Defendant's then-counsel at Katten that counsel would not be paid until August, and then only if funds were available; and he told Defendant's counsel at Litson the same thing, twice, during weekly calls. Confronted with the prospect that the very officer whose report he was contesting would leave his lawyers unpaid, Mr. Lindberg had to act to preserve his rights, and that necessity — not any desire for delay — was the principal reason for the change in counsel. Second, the transition does not excuse the Government's failure to respond. Undersigned counsel, Mr. Barnes, had already asked the Government to respond to Defendant's pending motions. And as soon as the inquiry into Defendant's representation was raised, a written notice from Mr. Lindberg was filed with the Court confirming his counsel. Third, the Government itself did not treat the representation question as an obstacle to responding. During two separate calls with Litson counsel, the Government raised no concern about who represented Mr. Lindberg; it observed only that the Court might be awaiting a note from Mr. Lindberg — not that the Government regarded the representation as a barrier to answering the motions. Fourth, Defendant's representation was never genuinely in doubt: in every instance, the withdrawing counsel and the incoming counsel coordinated the transition with one another, which could not have occurred unless each knew who represented Mr. Lindberg. Fifth, counsel have actively represented Mr. Lindberg throughout this period, including by petitioning the United States Court of Appeals for the Fourth Circuit for a writ of

mandamus — conduct incompatible with any suggestion that it was unclear who represented him. Sixth, the substance of the filings confirms the same point: counsel placed before the Court extensive documentary evidence of causation and filed numerous other motions, none of which could have been prepared without Mr. Lindberg's active participation — indeed, only Mr. Lindberg could have explained the documents on which those filings rest. That degree of client involvement is irreconcilable with the premise that it was unclear who represented him. The counsel-transition explanation therefore cannot bear the weight placed on it, and Defendant preserves his objection to the Government's non-response and to any suggestion that the counsel transition excused it.

## II. Defendant objects to the Court's stated intention to enter restitution on the Special Master/Receiver's numbers and to hold credits open, and reserves causation, offsets, credits, and valuation.

At the hearing, the Court described the course the Government proposed: "the Court can order the restitution based on what the special master is saying and then hold open the possibility of credits being given to Mr. Lindberg to reduce that restitution." Tr. 20:17–21. The Court later observed that it was "relying a lot on the special master in this matter … assuming he's constitutional." Tr. 47:5–8. Defendant respectfully objects. Adopting the Special Master/Receiver's recommended numbers and deferring credits to a later day is not the de novo determination that 18 U.S.C. § 3664(d)(6) and § 3664(e) require the Court to make on the Government's own proof. Section 3664(e) places on "the attorney for the Government" the burden of proving "the amount of the loss sustained by a victim as a result of the offense," and the

Special Master/Receiver's report does not carry that burden — it rests, by its own terms, on a "current guess on the value of the Primary Restitution Assets," Doc. 245 at 37, and on balances the Report "presumed … were accurate," *id.* at 9. Entry of a final restitution figure before the accounting, the causation determination, and the § 3664(e) hearing would fix the amount on a record the statute does not permit. Defendant objects and expressly reserves causation, foreseeability, the absence of superseding cause, offsets, credits, and valuation, none of which has been determined.[1]

## III. Defendant objects to the denial of the Rule 17(c) subpoenas (Doc. 248) and of the request that the Government disclose its Ares communications (Doc. 234), and preserves his compulsory-process and disclosure rights.

Defendant objects to the denial of his Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum (Doc. 248) and of his request, made as part of Doc. 234, that the Government be ordered to disclose its communications with Ares. The subpoenas and the requested disclosure go to the heart of the intervening-cause defense: whether, and by whom, the Ares transaction that would have made policyholders whole was blocked. The Government's own statements at the hearing confirm that responsive material exists and is material — that Ares "produced … something like 800" documents "to the government" in discovery, and that "302s from the FBI agents about various communications and meetings with Ares" exist. Tr. 44:7–10. What the Defendant requested was information relating to a call that Ms. Miller alleges in an

[1] The Court has yet to determine, de novo, causation, offsets, and credits—whether on motions practice or at the hearing—which will further change the restitution determination. Defendant expressly reserves this determination.

email which was already produced in Doc. 234. The government has not produced that specific document if it exists or stated that it does not exist. Instead, the government talked about the documents produced. This specific document is not available with Katten or current counsel. The produced documents do not address this issue. Denying Defendant the process to obtain and test that evidence, while the Government simultaneously relies on its own characterization of it, deprives Defendant of the means to contest causation on the very record the Government invokes. Defendant objects and preserves his rights under Federal Rule of Criminal Procedure 17(c), the Due Process Clause, and Brady v. Maryland and its progeny, and reserves the right to renew these requests.

**IV. Defendant objects to the Court's declining to require the Government to respond issue by issue and to the denial of the Motion to Strike the Government's Omnibus Response (Doc. 290).**

Defendant asked, repeatedly and specifically, that the Government be required to respond to his pending motions "issue by issue and not ignore issues." Tr. 48:16–19; see Tr. 45:15–20. The Court declined to compel that course, stating that Government counsel would "respond the way he's going to respond," Tr. 48:20–21, and declined to strike the Government's omnibus response, Tr. 48:6. The Court also denied Defendant's request that the unanswered dispositive motions be treated as unopposed for the Government's failure to respond within the time the Local Rules prescribe, ruling that it would not "dismiss because they missed some seven-day deadline or whatever" and that the request was "going to be denied right now offhand." Tr. 45:10–12. Defendant respectfully objects. Under this Court's Local

Criminal Rule 47.1(d), the Government must respond to a dispositive motion, and a motion to which it fails to respond "may be granted without further notice." A single omnibus submission that declines to engage Defendant's specific, evidence-backed showings on causation, offsets, credits, and valuation does not carry the Government's § 3664(e) burden and does not supply the record required for a de novo determination. Defendant preserves his Motion to Strike (Doc. 290) and his position that the Government's non-responsiveness leaves his showings unrebutted.

### V. Defendant objects, for the record, to the Court's characterizations of the defense and to the exclusion of Defendant's causation evidence as untimely, and preserves his objections to the adjudicator and his right to be heard on causation.

At the hearing the Court made a number of statements about the merits before the causation record had been received, including that "this entire defense case was a shell game, money moved around," Tr. 32:21–22; that a defendant does not "get to gamble with other people's money … take other people's money and go to the casino," Tr. 33:4–7; that "we know … fraud when we see it," Tr. 34:15; and, to defense counsel, "I know you're getting paid a lot of money to say these things," Tr. 34:7–8. When counsel sought to place the intervening-cause evidence on the record, the Court declined to consider counsel's account of what prior attorneys had said as "hearsay, unsworn testimony," Tr. 24:1–4, and analogized Defendant's causation motion to a belated "new trial" request that came only after "six years" and "all these brilliant lawyers," Tr. 35:1–15. Defendant respectfully objects, and does so solely to preserve the record. Defendant further objects, specifically, to the characterization of defense counsel's compensation; how much an attorney is paid is not a proper consideration

in the restitution determination, forms no part of the § 3664(e) analysis, and should play no role in the resolution of the disputed issues. The premise of the remark is, in any event, mistaken: Mr. Ramachandran receives no compensation for this representation. On criminal matters, Mr. Ramachandran works on a Dana, or generosity, basis. The jury's finding of fraud, and Defendant's plea, establish the offense; they do not establish the amount of each victim's loss or that the offense proximately caused it, which the Government must still prove by a preponderance of the evidence, 18 U.S.C. § 3664(e), and which the Report itself rests on a "current guess" and "presumed" balances, Doc. 245 at 37, 9. Defendant's causation showing (Docs. 234, 235) is timely because it is directed to the restitution determination now before the Court — the very stage the parties agreed would follow the merits — and it is supported by documentary evidence of intervening events, not by unsworn narrative. Defendant further preserves his objection, developed in his pending motions (Docs. 190, 269, 278), that the officer whose recommendations the Court proposes to adopt is not a neutral adjudicator, because he both liquidates the estate and quantifies the loss against it, and that "[e]ven appeal and a trial de novo will not cure a failure to provide a neutral and detached adjudicator." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 618 (1993) (citing *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972)). Defendant reserves his objections under the Due Process Clause, 28 U.S.C. § 455, and Article III. Separately, Defendant observes that the Court has, to this point, adopted the Government's positions over Defendant's objections, including on the ninety-day timetable and the proposal to

enter restitution on the Special Master/Receiver's figures; and, in light of that and of the statements set out above, Defendant respectfully reserves and preserves — without presently moving on the ground — any challenge to the impartiality of the proceeding under 28 U.S.C. § 455 and the Due Process Clause.

## VI. Defendant objects to any truncation of the causation and accounting determination to meet the August 24, 2026 deadline, and reserves that the statutory deadline is directory.

The Court stated that it would "rule on all motions that need to be decided by August 24th" and would "get it done by August the 24th." Tr. 45:24–25; Tr. 45:21–22. Defendant objects to the extent the ninety-day date is treated as a jurisdictional bar that compels entry of a final restitution amount before the accounting, the causation determination, and the § 3664(e) hearing. The deadline in 18 U.S.C. § 3664(d)(5) is directory, not jurisdictional; a sentencing court retains the power to determine the victims' losses after ninety days, as the Government itself acknowledged in invoking *Dolan v. United States*. Tr. 18:15–23. The record forecloses the ninety-day-cram-down premise in any event. The parties jointly moved to bifurcate the sentencing hearing — separating the restitution determination from the balance of sentencing — and the Court granted that motion. Joint Motion to Bifurcate Sentencing Hearing (Doc. 107); Order Granting Motion to Bifurcate (Doc. 108). That relief is fundamentally inconsistent with treating restitution as a rigid ninety-day process: had the ninety-day deadline been understood to control, there would have been no need for a motion to bifurcate sentencing at all. The bifurcation the parties sought and the Court granted necessarily presupposed that the restitution determination would follow, and

would take longer than, the remainder of sentencing — which is precisely why counsel explained that this "was never meant to be a 90-day process." Tr. 35:16–24. The Government, having joined that motion, has since reversed course: it now presses the very ninety-day cram-down the bifurcation was designed to avoid, urging that the Court "complete it within 90 days." Tr. 18:11–14. Defendant objects to the Government's attempt to disavow the bifurcation it agreed to and the Court granted, and preserves the point. Defendant reserves his position that the Court may, and where the loss cannot yet be determined accurately should, keep the amount open rather than enter an inaccurate award. 18 U.S.C. § 3663A(c)(3)(B).

## VII. Defendant reserves all constitutional challenges to the restitution determination.

Defendant reserves and preserves all constitutional challenges to any restitution award, including that the facts necessary to support such an award must be found by a jury beyond a reasonable doubt; that any award is subject to the Excessive Fines Clause of the Eighth Amendment; that the retrospective application of the Mandatory Victims Restitution Act as criminal punishment implicates the Ex Post Facto Clause; and that the reference to the Special Master/Receiver and the adoption of his recommendations implicate Article III and the nondelegation principle. Defendant does not waive any of these challenges by addressing the restitution issues on the terms the Court has set.[2]

[2] Defendant applies the preponderance standard of 18 U.S.C. § 3664(e) for purposes of this filing without conceding its constitutionality. Because restitution under the Mandatory Victims Restitution Act is criminal punishment, *see Ellingburg v. United States*, 607 U.S. ___, 146 S. Ct. 564 (2026), Defendant contends that the Sixth Amendment requires the facts necessary to support a restitution award—including the identification of any victim and the amount of loss—to be found by a jury beyond

**VIII. Defendant incorporates by reference and preserves all of his pending motions, and preserves every issue for appeal without waiver.**

Defendant incorporates by reference, and preserves without waiver, each of his pending motions and the issues raised in them, including: his Motion to Stay Asset Sales and Enforcement of the Preliminary Restitution Order (Doc. 172); his Emergency Motion to Stay All Asset Sales and Consolidated Objections to the Preliminary Order of Restitution (Doc. 190); his Motion to Enforce the Plea Agreement, Preserve Counsel Access, and Require Conflict-Free Government Counsel (Docs. 201, 202); his Emergency Motion Directing the Bureau of Prisons to Permit Daily Access to Counsel, a Computer, and the Case Records (Doc. 225); his Motion for a Determination That No Restitution Is Owed (Docs. 234, 235); his Motion for Issuance of Rule 17(c) Subpoenas Duces Tecum (Doc. 248); his Motion to Recoup the Distribution to Vista (Doc. 238); his Motion to Declare the Special-Master Reference Unconstitutional, to Disqualify and Remove the Special Master/Receiver, and to Set Aside the Restitution Orders (Doc. 269); his Second Motion to Set Aside the Special Master/Receiver's Report and the Restitution Orders (Doc. 278); his Motion to Adopt Prior Motions and Hold the Second Supplement in Abeyance (Doc. 282); his Motion to Strike the Government's Omnibus Response (Doc. 290); his Motion for Leave to File a Supplemental Response (Doc. 293); and his Motion for Reconsideration (Doc. 309). To the extent any of these motions has been denied,

---

a reasonable doubt, not by the Court by a preponderance of the evidence. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Southern Union Co. v. United States*, 567 U.S. 343, 360 (2012) (applying *Apprendi* to criminal fines). Defendant expressly reserves and preserves this issue and does not waive any Sixth Amendment, Ex Post Facto, or related challenge to the restitution determination.

Defendant objects and preserves the ruling for appeal; to the extent any remains pending, Defendant preserves it. Even if the Court should treat any issue as moot, Defendant expressly preserves it for appeal to the United States Court of Appeals for the Fourth Circuit, and the Government, having been afforded and having declined the opportunity to respond issue by issue, cannot then be heard to claim that it had no opportunity to do so.

## CONCLUSION

For the reasons stated, Defendant respectfully submits these Objections and Reservations, objects to the rulings and statements identified above, and preserves — without waiver and for all purposes, including appeal to the United States Court of Appeals for the Fourth Circuit — every issue raised or reserved herein, together with all issues that should have been heard and argued on his Motion to Enforce the Plea Agreement and to Require Conflict-Free Government Counsel (Docs. 201, 202). Defendant respectfully requests that the Court note these objections and reservations on the record.

Dated: August 21, 2026.

Respectfully submitted,

*/s/ Kenneth N. Barnes*
Kenneth N. Barnes
Barnes Legal, PLLC
356 Travel Lite Dr.
Raleigh, NC 27603
919-524-1977
Email: barnesatty@aol.com

*/s/ Vivek Ramachandran*
*Vivek Ramachandran*

*Dhamma Law PLLC*
*418 Broadway, Suite N*
*Albany, NY 12207*
*Email: vramachandran@dhammalaw.com*
*Admitted pro hac vice*

*Counsel for Greg E. Lindberg*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing upon all counsel of record and all parties registered to receive such notices in this case.

Dated: August 21, 2026.

*/s/ Kenneth Barnes*
Kenneth Barnes

*Counsel for Greg E. Lindberg*